**BERISFORD CAPITAL CORP., Plaintiff,**

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Defendant.**

No. 88 Civ. 0074 (CSH).

United States District Court, S.D. New York.

Jan. 20, 1988.

Barry J. Mandel, Alan Dinkoff, Baer, Marks & Upham, New York City, for plaintiff.

Terence G. Craig, Bruce Perlin, Law Dept., Central States, Southeast and Southwest Areas Pension Fund, Chicago, Ill. and Bruce J. Douglas, Morgan, Lewis & Bockius, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This matter comes before the Court on plaintiff Berisford Capital Corporation's ("Berisford") application, brought by order to show cause, for a temporary restraining order staying the time within which Berisford must commence arbitration pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1401, and enjoining defendant Central States Southeast and Southwest Areas Pension Fund ("Central States" or "Fund") from taking any action to collect from Berisford an alleged withdrawal liability or from declaring Berisford in default under that statute, 29 U.S.C. § 1399.

Plaintiff is a Delaware corporation with its principal place of business in New York. Defendant is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3), and is administered from an office in Illinois.

A hearing on plaintiff's motion was held on January 12, 1988 at which all parties

were represented by counsel. At the hearing, defendant Central States agreed to a fourteen day extension of the time within which Berisford must commence arbitration, and to voluntarily refrain from any attempts to collect the withdrawal liability or declare a default during the same period. By subsequent agreement, memorialized in a letter from Central State's counsel to the Court and dated January 13, 1988, the parties agreed to extend Berisford's deadline for commencing arbitration to April 1, 1988.

Defendant Central States, in response to plaintiff's motion, argues that the case is not properly before this Court and should be dismissed or stayed pending resolution of an action previously filed by Central States in the Northern District of Illinois. By its January 13, 1988 letter to the Court, counsel for Central States has pledged that in the event this action is stayed in favor of the Illinois action, Central States will not attempt to collect interim payments before April 1.

Plaintiff Berisford resists defendant's attempt to dismiss or stay the current action.

## FACTUAL BACKGROUND

Based on memoranda submitted in connection with Berisford's order to show cause and correspondence submitted by both parties subsequent to the January 12 hearing, the following facts appear.

Early in 1985 plaintiff Berisford helped finance the acquisition by Coordinated Food Companies ("Coordinated"), a wholly-owned subsidiary of Syncom Corporation ("Syncom"), of four food companies. Berisford loaned $2 million to Syncom, guaranteed by both Coordinated and the new entity into which the acquired companies were subsequently merged, Hancock–Nelson Mercantile Company, Inc. ("Hancock–Nelson"). As part of the security for the loan, Syncom pledged to Berisford the stock Syncom held in Coordinated and Hancock–Nelson.

In January 1986 an involuntary petition was filed against the new combined entity, Hancock–Nelson, in the United States Bankruptcy Court for the District of Minnesota. Later, in April of that year, the fund filed a proof of claim for an unsecured debt of approximately $3.75 million allegedly owed by Hancock–Nelson for liability arising out of Hancock–Nelson's complete withdrawal from the Central States pension fund.

Apparently sometime after Hancock–Nelson's bankruptcy, Syncom defaulted on its loan to Berisford, resulting in Berisford's foreclosure and eventual public sale on May 5, 1986 of the collateral pledged by Syncom, including Syncom's stock in Coordinated and Hancock–Nelson. At the May 5 sale, Berisford was the successful bidder and thus acquired Syncom's stock in Coordinated and Hancock–Nelson. That acquisition, Berisford says, ultimately proved to be worthless.

The Fund then sought to assert its claim for withdrawal liability against Berisford by sending to Hancock–Nelson, on September 16, 1986, a notice and demand for payment of withdrawal liability in which Berisford was named as the "Controlling Employer." Although Berisford then formally requested that Central States review its determination of withdrawal liability, Berisford has yet to receive a formal response to its request. Pending a response to Berisford's request by Central States, the parties entered into a number of consensual extensions of Berisford's time for initiating arbitration, with the final extension expiring January 15, 1988.

## DISCUSSION

The action brought by Berisford in this Court was filed on January 5, 1988. It seeks a declaratory judgment absolving Berisford of any obligation to satisfy the withdrawal liability alleged by the Fund. Central to Berisford's position is its claim that it acquired its interest in Hancock–Nelson after Hancock–Nelson withdrew from the pension plan, and that as a result it was not an "employer" at the time of the withdrawal and thus owes no liability.

The action brought in the Northern District of Illinois by Central States to collect the withdrawal liability was filed December

18, 1987, 18 days before the action in this Court. There is no dispute that the action brought in Illinois involves the same facts cited in Berisford's complaint.

The parties' most recent agreement extending Berisford's time to initiate arbitration and protecting Berisford from attempts to collect the debt allegedly owed to the Fund has for the time being mooted Berisford's request for a temporary restraining order. Thus the question now at issue is whether the action in this Court should be dismissed or stayed in favor of the previously-filed Illinois action, or proceed on the merits.

## A.

■ The rule in the Second Circuit is that where two actions involve substantially the same issues, as a matter of sound judicial administration "the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,' (citation omitted), or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969) (quoting *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir.1951). *See also Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir.1965), *cert. dismissed*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *Fort Howard Paper Co. v. William D. Witter, Inc. et al.*, 578 F.Supp. 301, 303 (S.D.N.Y.1984), *aff'd in part, rev'd in part*, 787 F.2d 784 (2d Cir. 1986); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County, et al.*, 542 F.Supp. 1317, 1320–21 (S.D.N.Y.1982). This so-called "first filed" rule acts as a "presumption" that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action. *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742, 747, 751 (S.D.N.Y.1977) ("an even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule"), *aff'd mem.*, 573 F.2d 1288 (2d Cir.1978).

However, the first-filed rule "is not to be applied in a mechanical way regardless of other considerations." *National Patent Development Corp. v. American Hospital Supply Corp.*, 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.) (quoting *Hammett v. Warner Brothers Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir.1949). "In deciding between competing jurisdictions, it has often been stated that the balancing of convenience should be left to the sound discretion of the district courts." *William Gluckin & Co.*, 407 F.2d at 178. And where the parties engage in a race to the courthouse to achieve "first filed" status after a breakdown in settlement negotiations, as may well be the case here, "the courts should be concerned with what the interests of justice require and not with who won the race." *National Patent Development Corp.*, at 118.

## B.

■ Plaintiff Berisford, while conceding that its action was the later filed,[1] advanced the argument at the January 12 hearing that the "balance of convenience" in this case tips in favor of allowing the second-filed action to go forward in this Court despite the existence of the action previously filed in Illinois. Analogizing to the situation where a party moves to transfer under 28 U.S.C. § 1404(a), Judge Weinfeld has suggested a nonexclusive list of factors to be considered when a party moves to stay a second-filed action:

> Among the factors to be considered are the convenience of the parties; the convenience of their witnesses; whether

---

**1.** Berisford does not concede, however, that the Illinois action was necessarily "first in time." In a letter to the Court dated January 12, 1988, Berisford's counsel notes that Central States was the first party served (due apparently to an innocent shortcoming on the part of Central States' process server, *see* transcript at 17–19) and argues that the controlling event should be the date service was effected, not when the complaint was filed. Berisford's argument is not compelling, however. The "first service" rule is not the law of this circuit, *National Patent Development Corp.*, 616 F.Supp. 114, 118 n. 7 ("this issue has not been definitively decided in this circuit"), and I see no reason to vary from what is the more predictable and more easily enforced rule adopted by what appears to be the majority of courts.

nonparty witnesses are subject to the subpoena power of the court insofar as their live testimony is more desirable than their deposition testimony;. the availability of documentary evidence; the relative burdens of expenses on the parties; and the degree of interruption with executives' functions insofar as their testimony is required or desirable upon the trial proper.

*National Patent Development Corp.*, 616 F.Supp. at 119. Berisford contends that it has no office or personnel in Illinois and that to litigate its case in that state would mean transporting documents, witnesses and attorneys from its headquarters in New York. (Transcript at 11.)

It is apparent that Berisford does not put great weight in this part of its case, for at the January 12 hearing Berisford agreed that this is not a case likely to involve the testimony of a significant number of witnesses or the production of great quantities of documents. (Transcript at 11–12.) If, however, the number of witnesses or documents did prove to be significant, it is worth noting that this action's geographical center of gravity, to the extent it has such a center, would seem to rest somewhere west of the Mississippi River. The Fund is administered in Illinois, its contributors appear to come primarily from outside the northeast, and the original debtor, Hancock–Nelson, is now facing bankruptcy proceedings in Minnesota, suggesting perhaps that it is a Minnesota corporation. There is thus no reason to believe that the convenience of witnesses or the efficient production of evidence would be better accomplished if this dispute were litigated in New York where the second action was filed.

As for the convenience of the parties themselves, while it is probably true that for Berisford, a corporation resident in New York, Illinois is the less convenient forum in which to litigate, there is no reason to think that the added burden on Berisford is any greater than would be suffered by the Fund if it were forced to litigate in New York.

This case can thus be easily distinguished from many of the cases in this circuit where, because of the litigation's extensive connection to the second forum, courts have rightly allowed the second-filed action to go forward. *See e.g., William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 179 (2d Cir.1969) ("The 'whole of the war and all the parties to it' are in the [second forum]"); *National Patent Development Corp. v. American Hospital Supply Corp.*, 616 F.Supp. 114 (S.D. N.Y.1984).

I conclude that the "balance of convenience" in this action does not favor the continued prosecution of this case in New York, and that it may, to a small degree, favor resolving the dispute in the Illinois court.

### C.

Although the scale measuring the "balance of convenience" in this case is probably flat, or perhaps tilted slightly in favor of litigating the case in Illinois, Berisford asserts that there are "special circumstances" that justify a variance from the first-filed rule. *See William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d at 178.

However, Berisford does not assert either of the two "special circumstances" that courts have traditionally recognized as justifying a departure from the first-filed rule. Those are, first, where the first-filed suit is against a customer of an alleged patent infringer while the second suit involves the infringer himself, and second, where forum shopping alone motivated the choice of situs for the first suit. *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. at 746.

As a "special circumstance" Berisford instead claims it has "no contacts" in Illinois, making personal jurisdiction over it there uncertain, and that therefore the action in New York, where, Berisford claims, jurisdiction over the defendant Central State is more certain, should be allowed to go forward. Lacking a record that develops the facts fully, I assume for the immediate discussion the truth of Berisford's premises—that is, that Berisford's connec-

224

tion to Illinois is minimal and that the Fund's connection to New York is considerable. I do so even though it appears that Berisford is a sophisticated company that apparently has provided financing for companies with midwestern roots, and even though Central States has denied having meaningful contacts with New York. (Transcript at 26.)

Berisford concedes that ERISA provides for nationwide service of process, 29 U.S.C. § 1451(d). Berisford argues, however, that this statutory source of personal jurisdiction would not apply to Berisford in Illinois unless it is established that Berisford is an "employer" within the meaning of ERISA. (Transcript at 9.) The question whether the Illinois district court has *in personam* jurisdiction over Berisford thus involves the identical legal issues raised by Berisford on the merits of its case—namely, whether Berisford is an "employer." Berisford claims that if it were forced to litigate in Illinois, and yet successfully proved there that it is not an employer under the statutory scheme, its due process rights would have been violated by being forced to litigate the merits of its case in a distant forum.

Berisford's argument is weakened by what little case law exists on the point. In *Connors v. Peles Coal Company*, 637 F.Supp. 321 (D.D.C.1986), also an action brought to collect an ERISA withdrawal liability, the defendant moved to dismiss for want of *in personam* jurisdiction. Noting that in light of the statute's provision for nationwide service of process, 29 U.S.C. § 1451(d), defendant's motion would succeed only if defendant were improperly named as an "employer," the court proceeded to find that there was sufficient reason to believe defendant was an "employer" and denied defendant's motion, after declaring its intention to treat the motion as one alleging failure to state a claim under F.R.Civ.P. 12(b)(6). Despite the defendant's claim that the court lacked *in personam* jurisdiction over him, the court expressed no hesitation about, in effect, deciding the merits of defendant's case.

Berisford relies on the case of *Columbia Pictures Industries v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977) to support its argument that jurisdictional uncertainty is a special circumstance justifying departure from the first-filed rule. That case gives little support to Berisford's position because the factual circumstances justifying the court's decision in *Columbia Pictures* are not present in this case.

In explaining its reasons for staying the first-filed (New York) action then currently before it, in favor of the second (California) suit, the court in *Columbia Pictures* made it clear that its decision was based on, besides a host of other factors, "considerations of judicial economy [that] militate[d] in favor of the California forum." 435 F.Supp. at 750.

The court's concern was two-fold. On one hand it was worried that if the court with uncertain jurisdiction erroneously concluded that there existed *in personam* jurisdiction and went ahead with the case, only to be reversed later on the jurisdiction question, considerable judicial resources would have been squandered in the meantime. The court explained:

> The possibility of an erroneous determination of personal jurisdiction in New York followed by lengthy proceedings thereafter over which we were ultimately found to lack jurisdiction, and the desirability of avoiding decisions unnecessary to ultimate resolution of the merits by a federal court strongly suggest that California is a more appropriate forum.

435 F.Supp. at 748. On the other hand, the court was concerned that even if it dismissed the case after deciding (correctly) that personal jurisdiction was lacking, then judicial resources would still have been wasted since the case would then be litigated afresh in California where jurisdiction was clear. 435 F.Supp. at 750.

The court in *Columbia Pictures* also stressed that the need to avoid a decision on the jurisdictional question was particularly important in that case because a time-consuming factual hearing might be necessary to determine the extent of defendant's New York contacts, and because the partic-

ular law on which the jurisdictional question hinged was uncertain in local law. *Id.*

The special facts involved in *Columbia Pictures* are easily distinguished from the case at bar, making it apparent that a significant waste of judicial resources is not a serious danger here.

Because the core of Berisford's jurisdictional argument is also the foundation of the merits of its case against the Fund, any decision by the Illinois district court on the threshold issue of whether Berisford is an employer under ERISA should bring an end to the litigation at the district court level and eliminate the danger present in *Columbia Pictures* that a successful appeal could make worthless a long course of litigation involving the merits of the case. Similarly, if in this case the Illinois court found that jurisdiction was lacking because Berisford was not an "employer," then the case would not likely return to this forum since the merits would already have been litigated favorably to Berisford in Illinois, with no resulting inefficiency.

In addition, other facts that were important to considerations of judicial economy in *Columbia Pictures* are not present in the current action. For example, in the present action a decision by the Illinois court on Berisford's status as an "employer" would be based on its interpretation of the federal statute and would not require that court to either conduct a detailed factual hearing or to resolve issues of state law that are unclear. *Cf.* 435 F.Supp. at 750.

Even if Berisford's jurisdictional argument were deserving of more weight than I have given it, I would not conclude in the "sound discretion" allotted to me in this matter, *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d at 178, that this single factor, standing virtually alone, should be so compelling as to cause me to depart from the well established and salutary first-filed rule. It is worth noting

in this regard that even in *Columbia Pictures*, the case on which Berisford places so much weight, the jurisdictional consideration was only one of many factors that, when "taken as a whole," 435 F.Supp. at 751, influenced that court in favor of the second forum. Also important to the court's decision in that case were certain equitable considerations that I do not consider present here, 435 F.Supp. 747–48, and what the court considered an obligation to give plaintiffs asserting anti-trust claims a broader than usual choice of venue, 435 F.Supp. at 748, also not the situation here.

Admittedly this is not a case where the facts call for application of the first-filed rule without hesitation. For example, this is not a situation where the court handling the first action has already decided preliminary issues in the case or invested considerable time in familiarizing itself with the cases's merits. Nor is this a situation where the second action was brought solely to vex the plaintiff in the first suit.[2]

■ While in some ways this is a close case, I nevertheless conclude that Berisford has not succeeded in overcoming the presumption that favors the first-filed rule. At best, Berisford has shown "an even or inconclusively tilted 'balance of convenience' [that] would ordinarily support application of the first-filed rule." *Columbia Pictures Industries v. Schneider*, 435 F.Supp. at 751.

■ From a policy perspective, application of the first-filed rule in this case is consistent with Judge Weinfeld's admonition in *National Patent Development Corp. v. American Hospital Supply Corp., supra,* at 118, that "courts should be concerned with what the interests of justice require and not with who won the race." Where, in a situation such as this one, the circumstances do not clearly call for departure from the first-filed rule, that rule should be applied without apology. A

---

**2.** Because of an unaccountable process server's delay in effecting service on Berisford in the Illinois suit, Berisford brought its New York action without knowledge of the prior filing. Counsel for Berisford are critical, in the context of their prior dialogue, with Fund counsel for not advising them directly of the Illinois filing. I can understand counsel's bruised feelings, but no equitable considerations arise. Counsel for both sides were playing hardball; but neither threw bean balls.

relatively firm rule that, while providing for the exceptional case, avoids in the main the need for *ad hoc* balancing of innumerable factors on a case-by-case basis is both more predictable for litigants—yielding more speedy, less expensive adjudication—and more easily applied by the courts—preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice.

## CONCLUSION

This action is stayed indefinitely in order to allow for the orderly conduct of the prior-filed action now pending in the Northern District of Illinois. The Clerk is directed to place the case on this Court's suspense calendar. Plaintiff may apply to have the action placed on this Court's active calendar at any time, upon notice and a showing of good cause.