Dea O'HOPP, Individually And On Behalf Of All Similarly Situated, Plaintiff,

v.

CONTIFINANCIAL CORPORATION, Continental Grain Company, James E. Moore, and Daniel J. Willett, Defendants.

Christopher G. Locallo, Individually And On Behalf Of All Similarly Situated, Plaintiff,

v.

ContiFinancial Corporation, Continental Grain Company, James E. Moore, and Daniel J. Willett, Defendants.

Scott Brenner, Individually And On Behalf Of All Similarly Situated, Plaintiff,

v.

ContiFinancial Corporation, Continental Grain Company, James E. Moore, and Daniel J. Willett, Defendants.

Yisroel Weingarten,, Individually And On Behalf Of All Similarly Situated, Plaintiff,

v.

ContiFinancial Corporation, Continental Grain Company, James E. Moore, and Daniel J. Willett, Defendants.

No. 99–CV–6794 ILG RML, 99–CV–8065 ILG RML, 99–CV–8074 ILG RML, 99–CV–8209 ILG RML.

United States District Court, E.D. New York.

March 13, 2000.

Aaron Lee Brody, Stull, Stull & Brody, New York City, for Christopher G. Locallo.

Steven G. Shulman, Milberg, Weiss, Bershad, Hynes & lerach LLP, New York City, for Dea O'Hopp.

Shane T. Rowley, Wolf & Haldenstein, New York City, for Scott Brenner.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Defendants in this case are ContiFinancial Corporation ("ContiFinancial"), its majority shareholder, Continental Grain Company, and two former officers of ContiFinancial, James E. Moore and Daniel J. Willett. Pursuant to 28 U.S.C. § 1404(a), defendants seek to transfer the above-captioned cases to the United States District Court for the Southern District of New York for consolidation with the related actions that are already pending there.

Since October 1999, seven putative class actions have been filed against the defendants—four in this Court (the "Eastern District Actions"), and three in the Southern District of New York (the "Southern

District Actions"). In all of those cases, plaintiffs seek to represent identical or overlapping classes consisting of all purchasers of the common stock or options of defendant ContiFinancial between January 29, 1998 and July 21, 1999. All of those actions allege, often in verbatim language, violations of Sections 10(b) and 20 of the Securities Exchange Act of 1934, based on the same alleged misstatements and omissions in ContiFinancial's press releases, SEC filings, and statements made to analysts during the purported class period.

All parties agree that the seven actions should be consolidated in a single district. The question before the Court is which of the two districts where these actions have been filed is the more appropriate venue under the circumstances. For the reasons set forth below, this Court finds that it is the Southern District of New York, and grants defendants' motion to transfer.

### BACKGROUND

On or about October 21, 1999, a purported class action entitled *Dea O'Hopp, Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corporation, et al.,* No. 99–CV–6794 ("*O'Hopp*"), was filed against defendants in this Court. Eight days later, on or about October 29, 1999, a virtually identical complaint was filed against the same defendants in the United States District Court for the Southern District of New York in an action entitled *I & M Associates, Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corporation, et al.,* No. 99 Civ. 10941 ("I & M").

Both complaints name the same four defendants and are brought on behalf of identical putative classes, consisting of all purchasers of ContiFinancial's common stock between January 29, 1998 and July 21, 1999, who claim to have been damaged as a result of the "dissemination of materially false and misleading statements concerning, among other things, the Company's deteriorating financial condition, and the effects these adverse undisclosed conditions would ultimately have on the Com-

pany's operations, liquidity, and stock price." *O'Hopp* Complaint, ¶ 2; *I & M* Compl. ¶ 2. This, plaintiffs allege, gives rise to claims under Sections 10(b) and 20(a) of the Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b–5 promulgated thereunder.

On November 18, 1999, a third class action, entitled *Elfriede Glancy, individually and on behalf of all others similarly situated v. ContiFinancial Corp., et al.,* 99 Civ. 11436 ("*Glancy*"), was filed in the Southern District. The *Glancy* complaint is strikingly similar to the *I & M* and *O'Hopp* complaints, alleging the same claims on behalf of the same class against the same defendants.

On December 6, 1999, counsel for the parties in *I & M, Glancy* and *O'Hopp* entered into stipulations in each of those cases in which they agreed, among other things, that (a) the claims asserted in all of the actions were substantially identical, (b) the actions should be consolidated in a single district and the proper venue determined, either by stipulation or upon motion, and (c) lead plaintiff and plaintiffs' lead counsel should be appointed pursuant to the Private Securities Litigation Reform Act ("PSLRA"), before any further proceedings took place, following which (d) lead plaintiffs' counsel would have 60 days within which to serve and file a consolidated amended class action complaint, to which defendants would respond within 60 days.

On or about December 9, 1999, two more class actions were filed in this Court: *Christopher G. Locallo, Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corp., et al.,* 99–CV–8065 and *Scott Brenner, Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corp., et al., 99–CV–8074.* Also on December 9, 1999, the third Southern District putative class action, entitled *William J. Black, et al., Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corp., et al.,* 99 Civ.11941 was filed. These complaints

contain numerous paragraphs which are identical to each other, and to the earlier-filed complaints. The fourth Eastern District action, *Yisroel Weingarten, Individually And On Behalf Of All Others Similarly Situated v. ContiFinancial Corp., et al.,* 99–CV–8209, was filed on December 15, 1999 and assigned to this Court as a case related to *O'Hopp.*

On December 21, 1999, plaintiffs in the Southern District Actions voluntarily dismissed their complaints pursuant to Fed. R.Civ.P. 41(a)(1). Thereafter, all seven plaintiffs filed in this Court a joint Lead Plaintiff motion under § 21D(a)(3)(B) of the PSLRA. Defendants moved in the Southern District on January 18, 2000 to have the three voluntary Rule 41(a)(1)(i) dismissals vacated, arguing that they were improper without court approval. *See* Fed.R.Civ.P. 23(e). That motion is now before the Southern District.

## DISCUSSION

### I. *General Principles under § 1404(a)*

■ The change of venue statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). It is well established that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The burden of demonstrating that a case should be transferred is on the moving party, *see Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), and a "clear-cut showing" must be made that transfer is in the best interest of the litigation. *Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, 454 (E.D.N.Y.1987); *Schieffelin & Co. v. Jack*

*Co. of Boca, Inc.,* 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

■ Among the factors the court should consider in making this decision are: (1) the weight accorded the plaintiff's choice of forum; (2) the place where the operative facts took place; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel unwilling witnesses; (6) the location of relevant documents and the relative case of sources of proof; and (7) trial efficiency and the interests of justice. *Balaban v. Pettigrew Auction Co., Inc.,* 1997 WL 470373 *2 (E.D.N.Y.1997) (citing *Bernal v. DuPont De Nemours E.I. and Corp.,* 1993 WL 378790 (S.D.N.Y.1993); *Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.,* 657 F.Supp. 1257, 1258–59 (S.D.N.Y.1987)); *see also Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203 (S.D.N.Y.1998) (citing *Wilshire Credit Corp. v. Barrett Capital Management Corp.,* 976 F.Supp. 174, 181 (W.D.N.Y.1997)).

### II. *Application of § 1404(a) to the Present Case*

#### 1. *Plaintiff's Forum Choice*

■ When considering a § 1404(a) motion, the general rule is that "plaintiff's forum choice should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 213 (S.D.N.Y.1995); *see also Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y.1989) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

■ When related lawsuits are filed in different judicial districts, courts generally follow what is known as the "first-filed" rule, which favors the forum where the first action was brought. "[A]s a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'" *Capitol Records, Inc.*

*v. Optical Recording Corp.,* 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) (quoting *Remington Prods. Corp. v. American Aerovap, Inc.,* 192 F.2d 872, 873 (2d Cir.1951)). The first-filed doctrine "does not supersede the inquiry into the balance of convenience required under § 1404(a)." *River Road Int'l, L.P. v. Josephthal Lyon & Ross Inc.,* 871 F.Supp. 210, 214–15 (S.D.N.Y.1995) (citing *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.,* 657 F.Supp. 1040, 1061 (S.D.N.Y.1987)). It creates a "presumption" that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action. *See Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742, 747, 751 (S.D.N.Y.1977) ("an even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule"), *aff'd mem.,* 573 F.2d 1288 (2d Cir.1978). The first-filed rule "is not to be applied in a mechanical way regardless of other considerations." *National Patent Development Corp. v. American Hospital Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (quoting *Hammett v. Warner Brothers Pictures,* 176 F.2d 145, 150 (2d Cir.1949)).

■ "The party asserting that the first-filed rule should not apply has the burden to show that special circumstances exist justifying departure from the rule." *Hanson PLC v. Metro–Goldwyn–Mayer, Inc.,* 932 F.Supp. 104, 106 (S.D.N.Y.1996) (citing *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 132 (S.D.N.Y.1994)).

(a) *Forum shopping*

■ Courts have identified several special circumstances that warrant an exception to the first-filed rule of priority. *See Columbia Pictures,* 435 F.Supp. at 747; *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir. 1969). One such circumstance "is where forum shopping alone motivated the choice of the situs for the first suit." *Kellen Co., Inc. v. Calphalon Corp.,* 54 F.Supp.2d 218, 223 (S.D.N.Y.1999) (quoting *William Gluckin,* 407 F.2d at 178); *see also Motion Picture Laboratory Technicians Local*

*780, I.A.T.S.E. v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986) ("[T]he chief 'special circumstance' we have noted is our interest in discouraging forum shopping.").

As will be discussed in the next section, this case has little connection to the Eastern District, and has a far stronger relationship to the Southern District. Plaintiffs' decisions (1) to file the *O'Hopp* action in this district, then (2) with full knowledge of that action to file three strikingly similar actions in the Southern District, (3) to file three more related actions in this district, and now (4) to oppose transfer of the actions from this Court to the Southern District, may reasonably be inferred to have been motivated by forum shopping. Plaintiffs have been unable to offer any other explanation. In such circumstances, the presumption created by the first-filed rule does not apply. See *Richardson v. City of New York,* No. 87 CV 214(RR), 1988 WL 156324, at \*6 (E.D.N.Y. Oct.14, 1988) which states:

> to the extent that plaintiff's argument betrays that her opposition to the transfer arises from some expectation of more favorable treatment in the Eastern District Courthouse, such motivation will not justify a choice of forum.... [E]fforts to select one district to avoid or obtain specific rulings of another district court should be disfavored and discouraged.

(b) *Securities Class Action Claims*

■ Another factor which weighs against giving any significance to plaintiffs' choice of forum is the fact that plaintiffs are seeking relief under the federal securities laws in a case that involves multiple putative class actions. As this Court stated in *Connors,* "[e]ven the plaintiff's choice of forum, which is generally given great deference, carries less weight in certain situations, such as when a plaintiff seeks to represent a widely dispersed class. 666 F.Supp. at 454.

### 2. *Locus of Operative Facts*

This case has far more connections to the Southern District than the Eastern District. Both corporate defendants are located and have their principal places of business in the Southern District, which is also where defendant Moore resides. Many of the documents and witnesses are located in that district, whereas none are located in this one. Only one of the thirteen named plaintiffs resides in this district, and none of the proposed lead plaintiffs lives here. None of the twelve law firms representing plaintiffs in these actions lists an office in the Eastern District, while all of those plaintiffs are represented by at least one law firm with offices in the Southern District.

More significantly, most of the events at issue, such as the issuance of press releases and analysts' presentations, took place in the Southern District. Virtually all of the purchases and sales in question occurred on the New York Stock Exchange.

Plaintiffs contend that the Eastern District has connections to this litigation sufficient to warrant keeping the cases here, namely: (a) the fact that members of the putative class (including 13 of the hundreds of "movants" seeking the appointment of the lead plaintiffs) apparently reside in this District; (b) these class members held more than 25,000 shares; and (c) ContiFinancial was the buyer, seller or original lender for 441 properties located within this District (representing a fraction of the total mortgage loan portfolio of ContiFinancial). None of these properties or loans, however, are at issue in this case, and the mere fact that ContiFinancial may be doing business in this District and a number of class members may reside here does not tip the balance of conveniences decidedly in favor of this district.

### 3. *Convenience of the Parties and Witnesses and Access to Proof*

Because of the close proximity between the Southern and Eastern District courthouses, it cannot be said that one venue is significantly more convenient than the other for the parties, their witnesses, or with respect to access to sources of proof.

### 4. *Trial Efficiency and the Interests of Justice*

One of the primary functions of § 1404(a) is to avoid the wasting of judicial resources and unnecessary expenses. *See Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL—585,* 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). In the present case, all parties agree that the actions should be consolidated in one district, but disagree as to which district is proper. Therefore, there is no risk of two cases proceeding simultaneously. All of the actions are in their preliminary stages and neither this Court nor the Southern District has expended considerable time and resources on these cases. However, the likelihood of bankruptcy proceedings being commenced shortly in the Southern District favors that venue.

### (a) *Bankruptcy Proceedings*

Over the past year, ContiFinancial has suffered substantial operating losses. Defendants assert that this case should be transferred to the Southern District because that is where bankruptcy proceedings are likely to commence. Plaintiffs respond that "the potential commencement of bankruptcy proceedings" is too remote a possibility to warrant a transfer at this time. Pl. Br. at 14. This is at odds with plaintiffs' allegations in their complaints, where they allege that bankruptcy proceedings are "likely to result ... once [the Company's] recently negotiated loan repayment extensions expire." *See O'Hopp* Compl. ¶¶ 45, 108. Plaintiffs'·assertion is also belied by ContiFinancial's most recent Form 10–Q filed with the Securities and Exchange Commission which states:

> The Company's Bank Facilities and the Greenwich warehouse and purchase facilities expire on March 31, 2000.... The Company does not currently have sufficient financial resources to repay

the borrowings under the Bank Facilities on such date, and no assurance can be given that the Company will be able to extend, renegotiate or refinance any of the facilities. The Company does not expect that the proceeds it would receive upon the consummation of any sale of its assets would be sufficient to allow the Company to repay the Bank Facilities and the Senior Notes or to replace the Greenwich facilities. Accordingly, the Company contemplates that it will be necessary to restructure its outstanding debt, including the Bank Facilities and the Senior Notes, by the commencement of reorganization proceedings under Chapter 11 of the Bankruptcy Code.

Reply Affirmation of Richard W. Reinthaler, Ex. A. ·

Defendants contend that if and when such proceedings are commenced, that will most likely be done in the Southern District of New York due to that venue's proximity to the Company's operations and creditors. Reinthaler Aff. ¶ 3. The only other possible venue would be Delaware, ContiFinancial's state of incorporation. Under no circumstances would a bankruptcy be commenced in the Eastern District. *Id.*

Several issues may arise in the Bankruptcy Court that will either require coordination with the District Court handling these cases or be sufficiently controversial to require District Court review. Such issues include the application of the automatic stay provisions to claims against other defendants, whether and to what extent discovery of the debtor should be allowed, and the determination of the validity and amount of plaintiffs' claims against the debtor. The Bankruptcy Court may be faced with the identical issues as to liability and damages that the District Court, already familiar with the issues, will need to decide vis-à-vis other, non-bankrupt defendants. Southern District bankruptcy proceedings will not be subject to transfer here, creating the prospect of duplicative litigation, potentially inconsistent results and a waste of judicial resources. *See Goodman v. Schmalz,* 80 F.R.D. 296, 302

(E.D.N.Y.1978) (finding "the bankruptcy proceedings in Boston are sufficiently 'related' to this securities action to warrant trial in the same district."); *Herman v. Doug Frank Dev. Corp.,* 385 F.Supp. 767, 769 (S.D.N.Y.1974) (Weinfeld, J.) (transferring securities fraud case to Arizona due to, *inter alia,* Chapter 11 bankruptcy proceeding pending there); *Foster v. Litton Indus., Inc.,* 431 F.Supp. 86, 87 (S.D.N.Y. 1977) (transferring shareholder derivative action to California due to, inter alia, pendency of bankruptcy proceedings there). *See also Teamsters Pension Trust Fund of Philadelphia & Vicinity v. Ratner Enters., Inc.,* Civ. A. No. 85–2690, 1986 WL 1204 (E.D.Pa.1986) (granting motion for a change of venue on the grounds that transfer would, *inter alia,* permit consolidation with related bankruptcy proceedings in the transferee court arising out of the same facts and sharing common issues with the case before it):

> Inconsistent decisions by different courts could well work an injustice against one of the parties. Placing all aspects of this dispute in a single court will allow for coherent and consistent resolution, as well as review of Bankruptcy Court decisions, on common issues by the district court with authority over the same and related issues in the non-bankruptcy context.

Id. at *2.

Given the need for consistency of rulings and coordination with the Bankruptcy Court, and the likelihood of such a filing in the Southern District of New York, it is in the interests of trial efficiency and justice that the cases in this Court be transferred to that district. This is especially so where (1) the cases in question have a much stronger connection to the Southern District than the Eastern District; and (2) neither court has expended considerable time or resources such that an otherwise appropriate transfer would not be warranted.

### CONCLUSION

Plaintiffs chose to file actions in both the Southern and Eastern Districts of New

York, thereby rendering transfer of some of their cases inevitable. For the reasons stated herein, these cases should be consolidated in the Southern District of New York. Therefore, this Court grants defendants' motion to transfer the *O'Hopp, Locallo, Brenner,* and *Weingarten* actions, and any subsequently filed related cases commenced in this district, to the Southern District of New York.