ANIMATION STATION, LTD. and
4–Front Video Design, Inc.,
Plaintiffs,

v.

THE CHICAGO BULLS, LP, United Center Joint Venture, Miller Brewing Company, a Corporation, Warner Bros. Pictures, A Time Warner Entertainment Company, NBA Properties, Inc., WGN Continental Broadcasting Company, a Corporation, Starwave Corporation, and Fallon McElligot, a Business Entity, Defendants

No. 97 Civ. 7527(JSR).

United States District Court,
S.D. New York.

Jan. 27, 1998.

Law offices of Kenneth D. Freundlich (Kenneth D. Freundlich, Mitchell M.Z. Twesky, Jack G. Fruchter, of counsel), New York City, for Animation Station, Ltd., 4–Front Video Design, Inc.

Cleary Gottlieb, Steen & Hamilton, New York City, (Katten Muchin & Zan's, Chicago, IL, of counsel), for Chicago Bulls, LP, United Center Joint Venture, Miller Brewing Co., NBA Properties, Inc., WGN Continental, Starwave Corp. and Fallon McElligot.

Dans Weber & Edwards, P.C., New York City, for Warner Bros. Pictures.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

On October 10, 1997, plaintiffs filed the instant Complaint in this Court. On January 20, 1998, the Court dismissed all but the first four causes of action. *See* Order, January 20, 1998. Now, upon defendants' motion, the remainder of the case is hereby transferred to the Northern District of Illinois, pursuant to 28 U.S.C. § 1404(a), for the following reasons.

The Complaint alleges that in August of 1994, three Illinois entities—plaintiff Animation Station, Ltd. ("Animation Station") and defendants United Center Joint Venture ("United Center") and Chicago Bulls, LP ("Bulls")—contractually agreed that Animation Station would produce an animated sequence for display during Bulls basketball games at the United Center arena. Complaint ¶¶ 13–15. The contract specifically provided that the animation—created by Animation Station and co-plaintiff 4–Front Video Design, Inc. ("4–Front"), who jointly owned the copyright, *id.* ¶ 20—was "intended solely for the use of The Chicago Bulls and [was] not for distribution or resale except by written agreement." *Id.* ¶ 16 & Ex. A. Nonetheless, the Complaint alleges, defendants Bulls and United Center thereafter licensed, distributed, and/or sold the animation to the various co-defendants, all of whom made further use of the animation without the consent

or authorization of plaintiffs. Complaint ¶¶ 21–25. Specifically, defendants Miller Brewing Company ("Miller"), a Missouri corporation, and Fallon McElligot ("Fallon"), a Minnesota entity, displayed the animation in a nationally televised beer commercial, *id.* ¶ 21; defendant Warner Bros. Pictures ("Warner"), a Delaware limited partnership, displayed the animation in the movie "Space Jam," *id.* ¶ 22; defendants NBA Properties, Inc. ("NBAP"), a New York corporation, and Starwave Corporation ("Starwave"), a Washington corporation, displayed the animation on the NBA's Internet web site, *id.* ¶ 23; and defendant WGN Continental Broadcasting Company ("WGN"), a Delaware corporation with its principal place of business in Illinois, displayed the animation during WGN's broadcasts of Bulls games played at the United Center arena, *id.* ¶ 25. Based on these allegations, the Complaint alleges claims of copyright infringement, unfair competition, conversion, and the like.

Shortly after the Complaint was filed, defendants moved to transfer the case to the Northern District of Illinois ("Northern District") pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first issue raised by the motion is whether this action could have been brought in the Northern District. Clearly the Northern District federal court would have subject matter jurisdiction over both the federal statutory claims and the supplemental state law claims pursuant to 28 U.S.C. § 1338 and § 1367. Likewise, venue would be proper in the Northern District because it is apparent even from the face of the Complaint that "a substantial part of the events or omissions giving rise to the claim occurred" in that district. *See* 28 U.S.C. § 1391(b)(2).

Plaintiffs, however, contend that defendant Starwave, a Washington State entity, may not be subject to personal jurisdiction in the Northern District because it "may not have the requisite contacts to be sued in Chicago." Plaintiffs' Opposition Brief at 14. Moreover,

while counsel for Starwave formally represented in open court that Starwave would consent to the exercise of personal jurisdiction in the Northern District, *see* transcript, January 14, 1998, consent is not sufficient for purposes of § 1404(a). *See PI, Inc. v. Ogle*, 932 F.Supp. 80, 84 (S.D.N.Y.1996) (citing *Hoffman v. Blaski*, 363 U.S. 335, 342–43, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)). Rather, as plaintiffs note, the test is whether jurisdiction was available at the time the suit was brought. *Id.* at 84.

Nonetheless, the Court concludes that jurisdiction over Starwave will exist if the case is transferred to the Northern District. Under the long-arm statute of the State of Illinois, 735 Ill.Comp.St.Ann. 5/2–209(c) (West 1997), the exercise of personal jurisdiction over a non-resident entity such as Starwave is appropriate as long as the due process requirements of the United States Constitution are satisfied. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995), *cert. denied*, 518 U.S. 1004, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). "Those standards have repeatedly been held to allow jurisdiction over a defendant who acts outside of a State's boundaries, but causes harm to an individual within the State, provided that it comports with 'traditional notions of fair play and substantial justice.'" *Id.* (citation omitted).

Such is the case here. According to the Complaint, Starwave together with NBAP created an allegedly infringing NBA web site through which plaintiffs' animation, which features the Bulls, could be accessed and downloaded by Bulls fans. *See* Complaint ¶ 23. Starwave would have had to know that many if not most of those fans reside in the Northern District, which would therefore be a prominent place in which the Illinois-based plaintiff, Animation Station, would suffer injury and could fairly bring suit.

The second, and somewhat closer issue raised by the instant motion is whether defendants have so clearly and convincingly established that transfer is warranted "for the convenience of parties and witnesses, and in the interest of justice," 28 U.S.C. § 1404(a), as to overcome the strong presumption that should be accorded a plaintiff's choice of forum. *See Pilates v. Pilates Institute, Inc.*, 891 F.Supp. 175, 182 (S.D.N.Y. 1995). While this determination must be made "according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)), relevant factors typically include "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." *Pilates*, 891 F.Supp. at 183 (citations omitted). This is not to say, however, that each such factor must be accorded equal weight or that other factors may not be considered; for in the end the determination must be "case-specific." *Stewart*, 487 U.S. at 29.

Here, there weighs heavily in the balance the readily apparent fact that the locus of a great many of the key operative events is the Northern District. The three parties to the underlying contract were Illinois companies, the contract was negotiated and largely executed in the Northern District, the resulting animation was played on the scoreboard at the United Center in Chicago, and the key alleged acts of infringement originated there. The fact that some of the defendants, having allegedly misappropriated plaintiffs' animation in Chicago with the help and connivance of the Bulls and United Center, thereafter distributed copies of it elsewhere is of lesser importance, especially since this unlawful distribution allegedly occurred on a generalized, nationwide basis. *See Royall Lyme Bermuda Ltd. v. Coastal Fragrance, Inc.*, No. 97 Civ. 2711(JFK), 1997 WL 620840, *2 (S.D.N.Y. Oct.7, 1997).

Another important fact in the balance is the high likelihood—again apparent from the very face of the Complaint—that most of the relevant documents, evidence, and witnesses will be found in the Northern District.[1] As for the parties themselves, while a few of the parties have connections in New York, those connections are substantially outweighed by the presence in Illinois of most of the parties and of the facts likely to weigh in this litigation. *See Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F.Supp. 1058, 1060–1061 (S.D.N.Y.1993).

While most (but not all) of the remaining factors similarly favor the Northern District, only one deserves further mention, *viz.*, trial efficiency and, more generally, conservation of judicial resources. Concurrent with the instant motion, defendant United Center had also moved to be dismissed on the ground that it was not subject to personal jurisdiction in this District under New York's long-arm statute. At oral argument on January 14, 1998, it became apparent that this was a close question; yet plaintiffs' counsel represented that, even if the motion to dismiss United Center were granted, it would institute a parallel lawsuit against United in the Northern District. Certainly it makes little sense to have two such actions pending in two federal districts. Accordingly, even though the Court need not formally rule on United Center's motion to dismiss for lack of personal jurisdiction, the substantiality of that motion and the real possibility therefore of duplicative litigation if this case is not transferred, reinforces the Court in its determination to transfer.

For the foregoing reasons, the Clerk of the Court is hereby directed to promptly transfer this action to the United States District Court for the Northern District of Illinois. The Case Management Plan previously ordered in this case will remain in full effect until and unless superseded by order of the District Judge in the Northern District of Illinois to whom the case is hereafter assigned.

SO ORDERED.

---

1. While plaintiffs now claim that the witnesses are about equally divided between the relevant districts, *see* Plaintiffs' Opposition Brief at 19–20, their broad-brush showing is unconvincing in light of their own Complaint's focus on what happened in Chicago. Moreover, plaintiffs do not seriously contest that most of the relevant documents and demonstrative evidence is located in the Northern District. *See* transcript, January 14, 1998.