Brian J. CALI, Individually and as Surviving Spouse and as Executor of the Estate of Donna Barbini–Cali, Deceased, and for the benefit of Decedent's Estate and Decedent's Survivors, et al., Plaintiffs,

v.

EAST COAST AVIATION SERVICES., LTD. d/b/a Executive Airlines; BAE Systems Plc.; BAE Systems Regional Aircraft, Inc.; and BAE Systems Regional Aircraft, Ltd., Defendants.

Nos. 00–CV–7276, 00–CV–6912, 00–CV–6906, 00–CV–7278, 00–CV–7297, 00–CV–7401, 00–CV–2870, 00–CV–2871 (ILG).

United States District Court,
E.D. New York.

Nov. 14, 2001.

Daniel F. Hayes, Esq., Patricia A. Moores, Esq., Biedermann, Hoenig, Massamillo & Ruff, P.C., New York.

Francis G. Fleming, Esq., Brian J. Alexander, Esq., Kreindler & Kreindler, New York.

Frank H. Granito, III, Esq., Speiser, Krause, Nolan & Granito, New York.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### *SUMMARY*

Plaintiff Brian Cali and nine other plaintiffs bring eight (8) separate diversity actions against East Coast Aviation Services, Ltd. d/b/a/ Executive Airlines ("Executive Airlines"), BAE Systems Plc ("BAE Systems"), BAE Systems Regional Aircraft, Inc., and BAE Systems Regional Aircraft, Ltd., (hereinafter referred to as the "BAE defendants"), alleging claims for their decedents' wrongful deaths in an Executive Airlines plane crash in Bear Township, Pennsylvania.[1] All of the seventeen passengers aboard the plane, and the two pilots, died in the crash. Eight (8) actions for the deaths of ten (10) passengers have been filed in the Eastern District of New York ("EDNY"), and seven (7) actions for the deaths of seven (7) passengers have been filed in the Middle District of Pennsylvania ("MDPA"). Executive Airlines now moves to transfer venue the eight (8) actions filed in this Court to the MDPA.

---

1. The law firm of Speiser, Krause, Nolan & Granito represents eight (8) plaintiffs (hereinafter referred to as the "Cali plaintiffs") in the following six (6) actions: 00–CV–7276 (Brian J. Cali); 00–CV–7278 (Christian J. Pilosi and James C. Pilosi); 00–CV–6912 (Leonard T. Erhardt); 00–CV–6906 (Gerald L. Decker and David J. Decker); 00–CV–7297 (Henry Male-

ski); 00–CV–7401 (Robin Phyllis Supatosky). The law firm of Kreindler & Kreindler represents the other two (2) plaintiffs (hereinafter referred to as the "Frantz plaintiffs") in the following two (2) actions: 00–CV–2870 (Arlene J. Decker); 00–CV–2871 (Alicia B. Frantz).

For the reasons that follow, the motion is granted.[2]

## BACKGROUND

On May 21, 2000, an Executive Airlines airplane crashed near Wilkes–Barre/Scranton Airport in Pennsylvania. (*See* Brian J. Cali Compl. ("Cali Compl.") ¶ 10.) The flight had been chartered by Caesar's Hotel in Atlantic City, New Jersey and carried seventeen (17) passengers, all of whom were Pennsylvania residents. (*See* Daniel F. Hayes Affidavit in Support of Motion to Transfer ("Hayes Aff.") ¶ 6.) The crash purportedly occurred when the airplane lost power to both of its engines. (*See* Cali Compl. ¶ 15.)

The airplane was a British Aerospace (now BAE Systems Plc) Jetstream model 3100 twin-engine, registered as N16EJ, which was manufactured in the United Kingdom by BAE Systems. (*See* Hayes Aff. ¶ 5.) Defendants BAE Systems Plc and BAE Systems Regional Aircraft, Ltd. are incorporated under the laws of England, and defendant BAE Systems Regional Aircraft, Inc. is a Delaware Corporation with its headquarters in Herndon, Virginia. (Memorandum of Law in Support of Motion to Transfer ("Mem.") at 12–13.) Executive Airlines is an on-demand charter company, with its headquarters located at Republic Airport, Farmingdale, Suffolk County, within this district, and is incorporated under the laws of New York State. (*See* Hayes ¶ 5.) The two pilots flying the plane were Executive Airlines employees. (*Id.*)

The first three actions arising out of this plane crash were filed against Executive Airlines only in the Court of Common Please in Luzerne County, Pennsylvania on June 20, 2000 (hereinafter referred to as the "Fumanti actions"). (*See* Hayes Aff. ¶¶ 10–11.) On July 21, 2000, the actions were removed to the MDPA and consolidated thereafter. (*Id.* ¶ 11.) Upon stipulation that removal was proper, District Judge A. Richard Caputo then ordered the plaintiffs to file complaints by a certain date. (*Id.*) Instead, the plaintiffs filed complaints in new actions under the Court's original diversity jurisdiction on December 1, 2000 against both Executive Airlines and the BAE defendants. (*Id.* ¶ 12.) Judge Caputo then entered an order administratively closing the earlier removed actions, and consolidating the three original jurisdiction actions. (*Id.* ¶ 13.)

On November 20, 2000, the first cases were filed in the EDNY. (*Id.* ¶ 15; Granito Aff. ¶ 12.) On or about April 4, 2001, the plaintiffs in the Fumanti actions filed a motion before the Judicial Panel on Multi-District Litigation ("JPMDL"), requesting transfer of the actions filed in the EDNY to the MDPA for pre-trial purposes only, pursuant to 28 U.S.C. § 1407. (*See Hayes* Aff. ¶ 19; Motion to Transfer to Multi-District Litigation, dated April 4, 2001, attached to Hayes Aff. as Ex. D.) The unopposed motion was heard before the JPMDL on July 26, 2001. (*See* Hayes Aff. ¶ 19; Granito Aff. ¶ 14.) A decision on that motion is pending.

The Cali plaintiffs and the Frantz plaintiffs raise similar claims against Executive Airlines and the BAE Defendants for wrongful death and survival damages based on negligence, and against the BAE

---

**2.** The BAE defendants have not formally joined in this motion, but, instead, have filed a document entitled "Notice of Request" for transfer of venue. While the Court will not construe this document as a properly filed motion, it is apparent from subsequent letters between the parties' counsel that the BAE defendants do not contest Pennsylvania jurisdiction. (*See* letter facsimile, dated July 30, 2001, attached to Frank H. Granito, III Affidavit in Support of Cali Plaintiffs' Opposition ("Granito Aff.") as Ex. D.)

Defendants for wrongful death and survival damages based on strict products liability and breach of implied warranty of fitness for intended use. (*See* Cali Compl. and Frantz Compl.) Specifically, the plaintiffs assign legal responsibility to Executive Airlines for, *inter alia*, the use, operation, control, inspection, repair, maintenance, and servicing of the aircraft that crashed on May 1, 2000, and to the BAE defendants for the unsafe design, manufacture, sale, service and field support of the subject aircraft, including the aircraft's fuel, propeller and power plant systems. (*See* Cali Compl. ¶¶ 20–21, 29, 39–40; Frantz Compl. ¶¶ 16, 24, 37.)

Executive Airlines now moves to transfer these cases to the MDPA pursuant to 28 U.S.C. § 1404(a). In support of transfer, Executive Airlines argues that: (1) the MDPA is a district were the actions could have been brought, as required by 28 U.S.C. § 1404(a), because the MDPA had personal jurisdiction over all defendants at the time this action was commenced; (2) the MDPA is presumptively the appropriate venue under the "first filed rule"; (3) the MDPA is the more convenient district; and (4) choice of law rules will likely lead to the application of Pennsylvania law. The Cali and Frantz plaintiffs reject these arguments on the grounds that Executive Airlines fails to adequately challenge by "clear and convincing" evidence the plaintiffs' chosen forum or that the actions could have been originally filed in the MDPA.

## DISCUSSION

### I. Standard Under § 1404(a)

■ The change of venue statute, 28 U.S.C. § 1404(a), provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of Section 1404(a) "is to prevent 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense ....'" *Van Dusen v. Barrack*, 376 U.S. 612, 626, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). In deciding whether transfer is appropriate, the court must engage in a two part inquiry: first, whether this action might have been brought in the proposed transferee district, and, second, if the action could have been brought in the proposed district, whether a transfer to that district is appropriate considering the convenience of the parties and the witnesses and the interest of justice. *See United States Fidelity and Guar. Co. v. Republic Drug Co., Inc.*, 800 F.Supp. 1076, 1079 (E.D.N.Y. 1992) (citations omitted).

■ It is well established that motions for transfer of venue "lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir.1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). The burden of demonstrating that a case should be transferred is on the movant, *Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 916 (E.D.N.Y.1994) (citation omitted), and a "clear-cut showing" must be made that transfer is in the best interest of the litigation, *Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 454 (E.D.N.Y.1987); *Smart v. Goord*, 21 F.Supp.2d 309, 315 (S.D.N.Y.1998).

### II. Whether the Actions Could Have Been Brought in the MDPA

■ A "district ... where [an action] might have been brought" has been inter-

preted to mean a district where an action might have been brought as of right by the plaintiff as to both venue and jurisdiction at the time the action was filed by the plaintiff. *Hoffman v. Blaski*, 363 U.S. 335, 344, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Elam v. Ryder*, No. 94–CV–151A, 1994 WL 705290, at \*3 (W.D.N.Y. Nov.1, 1994). The parties do not dispute that venue is proper in the MDPA under 28 U.S .C. § 1391(a). In diversity actions, such as the cases here, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." [3] 28 U.S .C. § 1391(a)(2). Here, the airplane crashed near the Wilkes–Barre/Scranton Airport in Pennsylvania. Thus, a substantial part of the events giving rise to the claims occurred in the MDPA, and venue is therefore proper in that district. *See Lethbridge v. British Aerospace PLC*, Nos. 89–CV–1407, 90–CV–5265, 1991 WL 233206, at \*2 (S.D.N.Y. Oct. 30, 1991) (holding venue proper in forum where airplane crash occurred under Section 1391(a)(2)); *Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 692 (S.D.N.Y.1994) (holding venue proper in state where car accident occurred).

The parties dispute, however, whether the MDPA had personal jurisdiction over the BAE defendants at the time the suits were commenced in the EDNY.[4] The plaintiffs argue that Executive Airlines has failed to establish by clear and convincing evidence that personal jurisdiction in the MDPA is proper as to the BAE defendants, and, moreover, that the BAE defendants' informal consent to jurisdiction via its "Notice of Request" for transfer, is inadequate to satisfy personal jurisdiction.

*See Hoffman*, 363 U.S. at 342–44, 80 S.Ct. 1084 (party may not consent to personal jurisdiction in transferee court after-the-fact in order to satisfy Section 1404(a) requirement). In opposition, Executive Airlines argues that the present case is distinguishable from *Hoffman*, and thus transfer is warranted even though personal jurisdiction over the BAE defendants has not been established. In the alternative, Executive Airlines argues that, if the Court requires a showing of personal jurisdiction over all defendants before it will allow the cases to be transferred, then it can make a *prima facie* showing of personal jurisdiction over the BAE defendants under either alter-ego or "stream of commerce" theories.

### A. Consent to Personal Jurisdiction

■ In *Hoffman*, the Supreme Court held that, for purposes of the change of venue statute, personal jurisdiction over all defendants must exist in the proposed transferee court independent of defendant's consent. 363 U.S. at 342–44, 80 S.Ct. 1084. The Cali and Frantz plaintiffs contend that the BAE defendants' informal consent/waiver of personal jurisdiction based on their "Notice of Request" for transfer to the MDPA will not permit Executive Airlines to unilaterally defeat the plaintiffs' chosen forum.

Executive Airlines asks this Court to transfer the EDNY cases regardless of whether personal jurisdiction has been established over the BAE defendants, because Executive Airlines is not attempting to "create venue" for purposes of transfer. Executive Airlines argues that the purpose

3. The other possible bases for establishing venue do not apply in this case. *See* 28 U.S.C. § 1391(a)(1) and (a)(3).

4. The plaintiffs do not dispute that personal jurisdiction over Executive Airlines is estab-

lished in the MDPA. (*See* Frantz Memorandum in Opposition ("Frantz Mem.") at 7–10 and Cali Memorandum in Opposition ("Cali Mem.") at 2–3.)

of the *Hoffman* decision was to deter defendants from creating venue solely in order to obtain transfers to their chosen forums. Executive Airlines points out that, in reaching its conclusion, the *Hoffman* Court was able to assume three propositions, all of which are not present in the cases before this Court. In *Hoffman*, it was conceded that (1) the actions were properly brought in the transferor forums; (2) statutory venue did not exist over either defendant in the transferee districts; and (3) the defendants were not within the reach of the process of the transferee courts. 363 U.S. at 341, 80 S.Ct. 1084. Here, Executive Airlines argues that (1) the plaintiffs had the right to bring their actions in the MDPA; (2) venue and jurisdiction exist in the MDPA over the moving defendant; and (3) lack of jurisdiction in the MDPA over the BAE defendants is no less disputed in the MDPA than it is in the EDNY. (*See* Reply Memorandum ("Reply Mem.") at 12–13.) Based on these distinctions, Executive Airlines argues that the intent of *Hoffman* will not be frustrated by transferring these cases, because Executive Airlines is within the personal jurisdiction of the MDPA and must defend other MDPA cases regardless of this Court's decision on the present motion. Thus, Executive Airlines asserts that it cannot be accused of attempting to create venue in a district with no relationship to the actions about which transfer is sought.

This Court is unaware of any cases which have overlooked *Hoffman's* holding based on the distinguishing factors highlighted by Executive Airlines. The cases in this Circuit to apply *Hoffman* have consistently refused to transfer cases in situations where personal jurisdiction could not be established over all defendants at the time the action commenced. *See, e.g., Kenwin v. La.*, No. 97–CV–907, 1999 WL 294800, at *2–3 (S.D.N.Y. May 11, 1999); *Animation v. Chicago Bulls*, 992 F.Supp. 382, 383–84 (S.D.N.Y.1998); *Wine Mkts. Int'l, Inc. v. Bass*, 939 F.Supp. 178, 179–81 (E.D.N.Y.1996); *Elam*, 1994 WL 705290, at *5. Accordingly, while Executive Airlines' argument is not uncreative, the Court will endeavor, as its sister courts have done, to determine whether personal jurisdiction would have been proper over all the defendants in the transferee district.

### B. *Personal Jurisdiction Standard in Change of Venue Motion*

■ Executive Airlines asserts that it has made a *prima facie* case of both general and specific personal jurisdiction over the BAE defendants in the MDPA, and that a *prima facie* showing is sufficient in order to allow transfer. (*See* Reply Mem. at 15.) Executive Airlines does not cite to any cases which hold that only a *prima facie* showing is required for transfer under Section 1404(a), and this Court is not aware of any cases which do. However, when a motion to dismiss for lack of personal jurisdiction is brought before any discovery has been conducted, only a *prima facie* showing of personal jurisdiction is required to defeat the motion to dismiss. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Based on the fact that very little discovery has taken place in these cases, it seems reasonable to require only a *prima facie* showing of personal jurisdiction to satisfy the jurisdictional requirement under Section 1404(a).[5] *Cf. Wine Mkts. Int'l*, 939

---

5. Executive Airlines also asserts that, once the cases are transferred, the transferee court will have to decide the ultimate question of whether it has personal jurisdiction over the BAE

defendants, because the BAE defendants raised the affirmative defense of lack of personal jurisdiction in their answer to the Fumanti complaint. Therefore, Executive Air-

F.Supp. at 180 (In a federal question case, court found sufficient minimum contacts to establish personal jurisdiction over defendant based on allegations in plaintiff's complaint.). Therefore, if Executive Airlines can establish a *prima facie* case of personal jurisdiction, such a showing will be sufficient to satisfy the first prong of the transfer venue analysis.

### C. Personal Jurisdiction Over the BAE Defendants

■ Rule 4(e) of the Federal Rules of Civil Procedure "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prods. Co. v. Colelli,* 149 F.3d 197, 200 (3d Cir.1998) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992)). In this case, that state is Pennsylvania. Pennsylvania's long-arm statute, 42 U.S.C. Pa. Cons. Stat. A. § 5322, permits courts to exercise jurisdiction over non-resident defendants "to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment." *Farino,* 960 F.2d at 1221 (citations omitted); *Savin Corp. v. Heritage Copy Prods., Inc.,* 661 F.Supp. 463, 467 (M.D.Pa. 1987). Thus, the exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is "valid as long as it is constitutional." *Pennzoil,* 149 F.3d at 199.

■ To comport with due process, the exercise of personal jurisdiction must be based on sufficient "minimum contacts" with the forum state such that the "maintenance of suit there does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotations omitted). The assertion of personal jurisdiction can be predicated on two independent grounds: general jurisdiction or specific jurisdiction. General jurisdiction is established when the contacts with the forum state are "continuous and systematic," even if the cause of action is not related to those contacts. *Pennzoil,* 149 F.3d at 200 (quoting *Provident Nat'l Bank v. Cal. Fed. Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (citations omitted)). Specific jurisdiction exists when the plaintiff's claim "is related to or arises out of the defendant's contacts with the forum." *Id.* (internal quotation marks and citations omitted). Stated another way, "specific personal jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or are related to those activities." *In re Latex Gloves Prods. Liab. Lit.,* No. MDL–1148, 2001 WL 964105, at *2 (E.D.Pa. Aug.22, 2001) (internal quotations marks and citations omitted).

### a. General Personal Jurisdiction

■ Executive Airlines argues that general personal jurisdiction lies over BAE Systems based on an alter-ego theory. Specifically, it argues that BAE Systems has two wholly-owned subsidiaries in Pennsylvania, which are really the alter-ego of their parent corporation, BAE Systems in England. Many Pennsylvania courts recognize that a well established alter-ego relationship between subsidiaries in the forum state and a foreign parent

---

lines argues that transferring these actions will permit one court to rule on the ultimate issue. By requiring Executive Airlines to make only a *prima facie* showing in this Court, it is arguable that principles of *res judicata* or collateral estoppel will not pre-

clude the MDPA from entertaining the affirmative defense because this Court will not have made a final judgment on the merits. *See Hoffman,* 363 U.S. at 342, n. 9, 80 S.Ct. 1084.

corporation will act as a basis for asserting personal jurisdiction over the parent. This is predicated on the idea that the parent corporation "carries on a continuous and systematic part of its general business within the forum state," via its subsidiary. *Savin Corp.*, 661 F.Supp. at 468 (recognizing that a foreign parent may be subject to personal jurisdiction in the forum state when the subsidiary in the forum is merely the alter-ego or agent of the parent); *In re Latex Gloves Prods. Liab Lit.*, 2001 WL 964105, at *3 (same); *Parker v. DPCE*, No. 91–CV–4829, 1992 WL 501273, at *5 (E.D.Pa. Nov.3, 1992) (same); *see also* 42 Pa. Cons.Stat. § 5301(a)(2)(iii); *but see Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.*, 593 F.Supp. 107 (E.D.Pa.1984) (holding that minimum contacts analysis of *International Shoe* rendered alter-ego principles irrelevant to personal jurisdiction determination). Asserting personal jurisdiction based on an alter-ego relationship must still comport with notions of due process. *See In re Latex Gloves Prods. Liab. Lit.*, 2001 WL 964105, at *6.

 In general, jurisdiction does not lie over a foreign parent corporation merely because it owns the shares of stock of the subsidiary doing business in the forum state. *Savin Corp.*, 661 F.Supp. at 468. To prevail on an alter-ego theory for jurisdictional purposes, a party must demonstrate that the "degree of control exercised by the parent is greater than normally associated with common ownership and directorship." *In re Latex Gloves Prods. Liab. Lit.*, 2001 WL 964105, at *3 (quotation and citation omitted). The inquiry is not limited to traditional alter-ego jurisprudence but encompasses whether or not there is a single functional or organic identity. *Id.* The parent must "control the day-to-day affairs of the subsidiary, such that the subsidiary is merely a department

of the agent." *Bellomo v. Pa. Life Co.*, 488 F.Supp. 744, 745 (S.D.N.Y.1980).

 Generally, courts look to ten factors in determining whether an alter-ego relationship exists. These factors include: (1) ownership of all or most of the stock of the related corporation; (2) common officers and directors; (3) common marketing image; (4) common trademark or logo; (5) common use of employees; (6) integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance by the related corporation of business functions which the principal corporation would normally conduct through its own agents or departments; (9) acting of the related corporation as a marketing arm of the principal corporation, or as an exclusive distributor; and (10) receipt by the officers of the related corporation of instructions from the principal corporation. *Superior Coal Co. v. Ruhrkohle*, 83 F.R.D. 414, 421 (E.D.Pa.1979). Other factors may include financing of the subsidiary by the parent, the parent's causing the incorporation of the subsidiary, the subsidiary being grossly under-capitalized, the parent paying the salaries or expenses of the subsidiary, the subsidiary having no business or assets apart from the parent, the failure to adhere to the formal legal requirements of the subsidiary, the confusion of distinction between the parent and subsidiary, and the subsidiary not having a full board of directors. *Savin Corp.*, 661 F.Supp. at 469.

 Executive Airlines addresses the first ten factors outlined above with respect to BAE Systems, and argues that two of BAE Systems' wholly-owned subsidiaries, BAE Systems Aerospace Electronics, Inc., located in Landsdale, Pennsylvania, and BAE Systems ADR, Inc., with offices in Pittsburgh, Pennsylvania, are the alter-ego of BAE Systems, located in England, and a defendant in these law-

suits. (*See* BAE Systems webpage identifying offices in over thirty states, attached to Patricia A. Moores Affidavit in Reply ("Moores Aff.") as Ex. C.)[6] This Court finds that the two wholly-owned subsidiary companies are, in fact, the alter-ego of defendant BAE Systems, which permits BAE Systems to carry on a "continuous and systemic" part of its business in Pennsylvania.

### i. Alter–Ego Analysis With Respect to BAE Systems

*Ownership of stock of related corporation*

The evidence shows that the two companies located in Pennsylvania are the wholly-owned subsidiaries of BAE Systems in England via BAE Systems' North America branch, referred to as BAE–NA, and BAE Systems Holdings, Inc. (*See* Reply Mem. at 19; Moores Aff. ¶¶ 8–17, 20–31 and attached Exs.) While courts have found that ownership of a subsidiary's stock is not determinative of an alter-ego relationship, it is one important factor in a court's analysis for finding that such a relationship exists. *See Savin Corp.*, 661 F.Supp. at 469.

*Common officers and directors*

According to the BAE Systems' 2000 Annual Report, BAE Systems and all of its subsidiaries share one common board of directors, thus evidencing one corporate entity with one group of decision-makers effecting all of BAE Systems world-wide. (*See* Moores Aff. ¶ 10; 2000 Annual Report attached to Moores Aff. as Ex. E.) In addition, BAE–NA marketing directors report directly to the corporate officers of BAE Systems. (*See* Moores Aff. ¶¶ 16–17; marketing organization chart, attached to Moores Aff. as Ex I.) In finding an alter-ego relationship, a significant overlap of directors and officers is one indication that the parents controls the operations and decisions of the subsidiary. *See, e.g., Savin Corp.*, 661 F.Supp. at 469; *In re Latex Gloves Prods. Liab. Lit.*, 2001 WL 964105, at *4 (finding that the nearly complete overlap of officers and directors shows that the parent "can exercise control over its subsidiaries"). Here, the hierarchical structure of BAE Systems and its common board of directors suggests that BAE Systems controls the operations of its Pennsylvania subsidiaries.

*Common marketing image and use of trademark or logo*

Perhaps the most compelling evidence that the two Pennsylvania subsidiaries are the alter-ego of BAE Systems is based on the fact that all of BAE Systems' websites present a unified marketing image, including common design elements, logos and language. (*See* Moores Aff. Exs. A–P, Q, Y–Z). Specifically, the two Pennsylvania companies' websites include the same logo as BAE Systems. (*Id.* Exs. M, Q.) The textual portions of the various websites provide further evidence of the existence of one global company. For example, BAE Systems' main website boasts that BAE Systems is "a truly global systems, defense and aerospace company," and frequently refers to its "world-wide" reach.

---

**6.** In support of its motion, Executive Airlines has submitted several documents in the form of exhibits, attached to both the Hayes and Moores Affidavits. The plaintiffs oppose the use of these documents on the ground that they are uncertified hearsay. However, the plaintiffs do not dispute the information presented in the documents. Accordingly, the Court will take judicial notice of the information contained within the documents pursuant to Fed.R.Civ.P. 201, which consist of various webpages from BAE Systems' websites and online database pages from certain government agencies, including the Pennsylvania Department of State, Bureau of Corporations, and the Federal Aviation Administration. (*See* Exs. attached to Hayes and Moores Affs.)

(*Id.* ¶ 6; map of BAE–NA offices, attached to Moores Aff. as Ex. C.) [7] Moreover, the subsidiary companies' websites refer to their places within the larger dynamic global organization of BAE Systems. (*Id.*) Thus, it is clear from the webpages that BAE Systems operates as one global company with a multitude of offices and stores around the world.

*Common use of employees*

While no formal evidence of a common use of employees among subsidiaries and principal has been provided, it is apparent that BAE Systems considers all of its subsidiaries' employees to be employees of one global organization. This conclusion is premised on the fact that BAE System's Annual Reports for the year 2000 has included the subsidiaries' employees in its tally when reporting to its shareholders the total number of employees working for BAE Systems world-wide. (*See* Moores Aff. ¶ 12; 2000 Annual Report attached to Moores Aff. as Ex. E page 44.)

*Integrated Sales System and interchange of managerial and supervisory personnel*

BAE Systems has a common marketing scheme designed to attract consumers of BAE Systems' various products worldwide. BAE Systems also has hypertext links set up on its various websites which allows visitors and consumers to the sites to access other parts of the company. (*See* Moores Aff. ¶ 38; website to BAE Systems Regional Aircraft, attached to Moores Aff. as Ex. Z.) In addition, in January 1989, British Aerospace Plc became the "headquarter management organization" for the company, which strongly suggests that there is significant interaction between managerial personnel and its subsidiaries. (*See* Moores Aff. ¶ 7).[8]

*Performance by the related corporation of business functions which would normally be conducted by the principal corporation*

British Aerospace Electronics, Inc. manufactures aerospace electronics and complements the business functions of its principal, as well as maintains product testing and product support departments. (*Id.* ¶ 22, webpage, attached to Moores Aff. as Ex. M.) British Systems, ADR, provides data and geographic information to various BAE Systems' clients around the world. (*See* Moores Aff. ¶ 28; webpage, attached to Moores Aff. as Ex. Q.) These functions directly relate to BAE Systems' business purpose to provide defense and aerospace services, and therefore it is reasonable to infer that BAE Systems depends on its Pennsylvania subsidiaries to perform these functions on its behalf. "[W]here a corporation has a wholly-owned subsidiary performing services which would ordinarily be performed by its own service employees ... the parent company should not be allowed to hide behind the corporate fiction, but, rather, should be required to submit to the jurisdiction ... where the parent corporation, for all intents and purposes, transacts its business." *K.J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589, 590–91 (S.D.N.Y.1968). In contrast, a "holding company could simply hold another type of subsidiary," and therefore the subsidiary would not be performing a function that the parent holding company would otherwise have to do. *Gallagher v. Mazda Motor of Am., Inc.*, 781 F.Supp. 1079, 1085 (E.D.Pa.1992). The two Pennsylvania subsidiaries are performing services that BAE Systems would otherwise have to do, thus further support-

---

**7.** There appears to be two number 6 and 7 paragraphs in Moores's affidavit. For purpose of this citation, the first paragraph number 6 is intended.

**8.** The first number 7 paragraph is intended.

ing the conclusion that they are, in fact, the alter-ego of BAE Systems.

*Related corporation acting as marketing arm of the principal corporation, or as an exclusive distributor*

The hierarchical corporate structure of BAE Systems and the common marketing images projected on the various websites suggest that BAE Systems' subsidiaries operate as marketing arms of the principal corporation.

*Receipt by the officers of the related corporation of instruction from the principal corporation*

BAE Systems utilizes a Headquarters Management Organization to manage its wholly-owned subsidiaries, and it is apparent from the corporate structure that lower corporate officers report to higher corporate officers in the organization. (*See* Moores Aff. ¶ 7; corporate structure diagram attached to Moores Aff. as Ex. G.) This evidence suggests that BAE Systems controls the ultimate operations of its subsidiaries.

Based on the foregoing, there is more than enough evidence to support an inference that the two Pennsylvania subsidiaries are the alter-ego of BAE Systems. The two Pennsylvania companies are the wholly-owned subsidiaries of BAE Systems. There is one common board of directors which oversees all of BAE Systems' operations, and lower level officers report directly to higher level management of the parent company. Moreover, the common marketing scheme, logo and language shows that BAE Systems and its subsidiaries "hold themselves out to the public as a single entity that is conveniently departmentalized either nationally or world-wide." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 402 F.Supp. 262, 328 (E.D.Pa.1975).

The next question is whether due process considerations are satisfied. *See In re Latex Gloves Prods. Liab. Lit.*, 2001 WL 964105, at *6. The question therefore is whether BAE Systems had "reasonable expectations as to suability" in Pennsylvania. *Id.* The fact that BAE Systems boasts a "world-wide" company, with accessibility in North America, including thirty some odd offices, of which two are in Pennsylvania, would justify the conclusion that it is amenable to being sued in Pennsylvania. *Id.* at *6 n. 20. Accordingly, personal jurisdiction is proper over BAE Systems in the MDPA as it has a "continuous and systemic" presence in Pennsylvania through its subsidiaries and a reasonable expectation of being sued in that forum.

### ii. *General Jurisdiction With Respect to the Regional BAE Defendants*

Executive Airlines does not address in its memorandum of law whether general personal jurisdiction lies with respect to BAE Systems Regional Aircraft, Ltd. and BAE Systems Regional Aircraft, Inc., the other two BAE defendants in this litigation. However, based on the statements in Moores's affidavit, and the evidence provided in the attached exhibits, this Court is driven to conclude that these regional companies are part of BAE Systems' one global entity and, therefore, general personal jurisdiction is also proper as to these regional companies. Moores avers that BAE Systems' regional companies are present in Pennsylvania through their various corporate activities. (*See* Moores Aff. ¶¶ 36–46.) Moreover, Moores explains that BAE Systems Regional, Ltd., with its headquarters in Virginia, does not maintain an identity separate from BAE Systems. (*Id.* ¶ 38.) Moores also states that the website makes no distinction between Regional Aircraft, Ltd. and Regional Aircraft, Inc., and that the companies' purposes are to

sell and service Jetstream 3100 type aircrafts, the same aircraft at issue in this litigation. (*Id.* ¶ 39; webpage of BAE Systems Regional Aircraft Services, attached to Moores Aff. as Ex. AA.) BAE Systems Regional Ltd.'s website provides a direct link to BAE Systems' website; calls itself "t[h]e website for the regional aircraft activities of BAE Systems Aircraft Services Group"; and states the following: "BAE Systems is a world-class company with the financial strength, large scale capability and global reach to take on the most challenging aerospace and defense projects." (Website, attached to Moores Aff. as Ex. Z.) [9] The webpage also states that BAE Systems Regional Aircraft's purpose is to provide services to everyone regardless of geography. (*Id.*) Based on the foregoing, this Court concludes that the regional companies are part of the same global entity as BAE Systems, and, therefore, general personal jurisdiction in the MDPA is proper as to the regional companies for the same reasons general personal jurisdiction is proper as to BAE Systems.

### b. *Specific Personal Jurisdiction*

Executive Airlines also argues that the MDPA has specific personal jurisdiction over the BAE defendants. Having found that the MDPA has general personal jurisdiction over the BAE defendants, this Court's specific personal jurisdiction analysis may seem superfluous. Nevertheless, the Court will entertain the defendants' claim to remove any possible doubt that personal jurisdiction is proper under Section 1404 as to all defendants in the MDPA.

To make a finding of specific jurisdiction, a court first applies a mandatory standard: whether the defendant had minimum contacts with the forum such that the defendants could have "reasonably anticipate[d] being haled into court there," *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and second, a discretionary standard: whether the assertion of personal jurisdiction based on those minimum contacts comports "with fair play and substantial justice," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *Pennzoil,* 149 F.3d at 201. Although only discretionary, the Third Circuit generally engages only in this second tier of the analysis in determining questions of specific jurisdiction. *Id.* Often times, especially in products liability cases, a court will have to engage in the specific personal jurisdiction analysis known as the "stream of commerce" theory. *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559. The "stream of commerce" theory, as a means of asserting specific personal jurisdiction, is predicated on the idea that a non-resident who injects its goods, even indirectly, into the forum state and either "derived a substantial benefit from the forum state or had a reasonable expectation of deriving a substantial benefit from it," cannot be shielded from personal jurisdiction in that state. *Pennzoil,* 149 F.3d at 203 (citation omitted); *see Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J. *plurality* ) (three different approaches to the stream of commerce analysis came out of this opinion).[10]

---

**9.** Executive Airlines does not provide the home page or welcome page to the BAE Systems Regional, Ltd. website, but only a page within the site labeled "About Us."

**10.** The Third Circuit has not yet ruled on which approach it will adopt, of the three approaches enunciated in *Asahi. See Renner v. Lanard Toys, Ltd.,* 33 F.3d 277 (3d Cir. 1994) (declining to choose between Justice O'Connor's and Justice Brennan's plurality,

Executive Airlines argues that specific personal jurisdiction is established in the MDPA because a BAE Systems' aircraft crashed in Pennsylvania, thus, invoking the harm/in-tort/out basis for jurisdiction under Pennsylvania's long-arm statute. *See* 42 Pa. Cons.Stat. § 5322(A)(4) (Personal jurisdiction may be established over any person "[c]ausing harm or tortious injury in the Commonwealth by an act or omission outside the Commonwealth.") In addition, Executive Airlines argues that the causes of action arise out of the BAE defendants' contacts with Pennsylvania, because the BAE defendants manufactured the aircraft, placed it into the stream of commerce, and specifically sold and marketed that type of aircraft in Pennsylvania. (*See* Moores Aff. ¶¶ 39–44.) Moreover, BAE Systems Regional Aircraft not only placed the allegedly "defective" aircraft into the stream of commerce, but indicated an intent to serve the market in the forum state by selling aircrafts there and, through business units in Pennsylvania, providing regular advice to Pennsylvania customers. (*Id.* ¶¶ 22, 29.) At least one BAE Systems Regional Aircraft customer is located in Pennsylvania, and at least five BAE Systems aircrafts are being operated by companies in Pennsylvania. (*Id.* ¶¶ 40–43; FAA records, attached to Moores Aff. as Exs. BB, CC, DD.) Thus, Executive Airlines argues that BAE Systems has benefitted from Pennsylvania's laws that "regulate and facilitate commercial activity." *Pennzoil,* 149 F.3d at 206.

 Executive Airlines has made a *prima facie* showing of specific personal jurisdiction at least with respect to BAE Systems Regional Aircraft, Ltd. and Inc., assuming these entities are one and the same. Put simply, the evidence indicates that BAE Systems benefitted from Pennsylvania residents and corporations who bought and used BAE Systems' aircrafts, and one of the same aircrafts (although not necessarily one actually sold in Pennsylvania) was involved in a plane crash in Pennsylvania. *See Electro Med. Equip., Ltd.,* 1999 WL 1073636, at *5 (finding specific personal jurisdiction over parent company in Switzerland because company marketed and sold product in forum state, and other additional factors were met).

 Thus, having determined that specific personal jurisdiction would be proper under the stream of commerce analysis, the Court must next ascertain whether the exercise of jurisdiction is "reasonable." *Asahi Metal Indus. Co., Ltd.,* 480 U.S. at 114, 107 S.Ct. 1026. The determination of reasonableness rests on several factors, including the burden on the defendant, the interests of the forum state, and the plaintiff's interests in obtaining relief. *Id.* Here, based on the fact that BAE Systems has companies in the United States, the concern that the burden of defending itself "in a foreign legal system," is not "too great" when compared with the plaintiffs' rights in obtaining relief. *Id.*

As for specific personal jurisdiction over BAE Systems in England, the Court will look to the relationship between BAE Systems and its regional companies in determining whether it would be fair to impute their contacts in the forum state to their European parent. The evidence taken as a whole strongly suggest that BAE Systems is the principal corporation which oversees the operations of its regional entities. Therefore, a *prima facie* case of specific

while not considering Justice Steven's). Generally, courts in that Circuit have avoided deciding the issue by ruling that specific personal jurisdiction lies under any standard.

*See Electro Med. Equip., Ltd. v. Hamilton Med. AG, No.* 99–CV–570, 1999 WL 1073636, at *5 (E.D.Pa. Nov.16, 1999).

personal jurisdiction has been established as to that principal corporation.

### III. Convenience of the Parties and the Witnesses and the Interests of Justice

 Having established that both venue and personal jurisdiction is proper in the MDPA, the Court will next consider whether transfer is appropriate under Section 1404(a). In making such a determination, a court will consider the following factors: (1) the weight accorded plaintiffs' choice of forum; (2) the place where the operative facts took place; (3) the convenience of the parties; (4) the convenience of witnesses, and the availability of process to compel unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) a forum's familiarity with the governing law; and (7) trial efficiency and the interest of justice. *See, e.g., Balaban v. Pettigrew Auction Co. Inc.*, No. 96–CV–3177, 1997 WL 470373, at *2 (E.D.N.Y.1997) (citing *Bernal v. Du Pont De Nemours E.I. and Corp.*, No. 93–CV–1639, 1993 WL 378790, at * 1 (S.D.N.Y. Sept.24, 1993)); *Dwyer*, 853 F.Supp. at 692; *Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*, 657 F.Supp. 1257, 1258–59 (S.D.N.Y.1987); *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp.2d 203, 208 (S.D.N.Y.1998) (citing *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F.Supp. 174, 181 (W.D.N.Y.1997)).

Here, the overriding interest of justice component weighs heavily in favor of transfer, because the inefficiency and waste of resources that will result if the actions were to proceed in separate venues is not overcome by any of the other factors or any combination of them.

### A. Plaintiffs' Choice of Forum

 "A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998) (citations omitted). However, when the plaintiff does not reside in the chosen forum, and the plaintiff's chosen forum has no material connection to the facts or issues of the case, that weight is diminished. *See Kingsepp v. KMart Corp.*, No. 96–CV–5167, 1997 WL 269582, at *2 (E.D.N.Y. May 5, 1997); *Houck v. TWA, Inc.*, 947 F.Supp. 373, 375–76 (N.D.Ill.1996).

All of the ten plaintiffs in these cases are residents of Pennsylvania, which is also the locus of the accident. However, the cases have some material connection to New York because Executive Airlines is a New York corporation with many of its employees located in New York, and the plane left from a New York airport. Thus, although the plaintiffs' choice of forum should be given less weight because the plaintiffs are not residents of New York, their choice should be afforded more than "nominal weight," *Houck*, 947 F.Supp. at 375, considering the litigations' material connections to New York.

 In addition, Executive Airlines argues that the "first-filed rule" applies in this case and creates a presumption in favor of transfer. According to the "first-filed rule," when related lawsuits are filed in different judicial districts, courts generally choose to transfer the actions to the forum where the first action was brought. *O'Hopp v. Contifinancial Corp.*, 88 F.Supp.2d 31, 34 (E.D.N.Y.2000). The first filed suit should have priority, "absent the showing of balance of convenience in favor of the second action." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1353 (S.D.N.Y.1992) (quotations and citations omitted). Thus, "the first-filed rule does not supersede the in-

quiry into the balance of convenience required under [Section] 1404(a)," but creates a presumption that may be rebutted by proof that proceeding in the forum of the second-filed action is more desirable. *River Road Int'l. L.P. v. Josephthal Lyon & Ross, Inc.*, 871 F.Supp. 210, 214–15 (S.D.N.Y.1995) (citing *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1061 (S.D.N.Y.1987)); *O'Hopp*, 88 F.Supp.2d at 35 (citation omitted). "The first-filed rule is not to be applied in a mechanical way regardless of other considerations." *O'Hopp*, 88 F.Supp.2d at 35 (quotation and citation omitted).

The plaintiffs argue that the application of the "first-filed rule" is inappropriate in this situation because the MDPA and EDNY lawsuits were filed by different plaintiffs, whereas the first-filed rule generally applies in cases when the same or overlapping class of plaintiffs files two actions in separate districts. Second, they argue that, in any event, the first EDNY lawsuit was filed technically before the MDPA actions. Although the "first-filed rule" is often applied in cases when the same plaintiffs filed separate lawsuits in two districts, this is not necessarily a prerequisite to proper application of the rule. *See Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir.1974) (holding first-filed rule applicable even where parties or plaintiffs in the two actions are not identical). Moreover, the plaintiffs wish the Court to take an overly mechanistic approach in determining which actions were filed first. Regardless of whether the first actions were filed in state or federal court, the Fumanti actions were clearly the first cases to be filed of all the cases arising out of this plane crash. These actions were then later removed and consolidated with the diversity actions filed in the MDPA. (*See* Hayes Aff. ¶¶ 10–13.) Thus, under the first-filed rule, the MDPA should have priority over these cases, as long as the bal-

ance of convenience and the interest of justice do not suggest that proceeding in the EDNY is more desirable. *See Capitol Records, Inc.*, 810 F.Supp. at 1353; *River Road Int'l, L.P.*, 871 F.Supp. at 214–15.

### B. *Locus of Operative Facts*

The operative facts in this case exist in Pennsylvania, in New York, and in England. The operative facts in Pennsylvania include the fact that the airplane crash occurred there, and the wreckage is being stored there. The most notable connection to New York is the fact that Executive Airlines operates out of New York, and the airplane took off from a New York airport. Additionally, the aircraft was maintained in New York prior to take-off, the pilots and flight crew were trained, certified, and evaluated in New York, and other airline and airport employees who possess information regarding the plane's fuel systems are located in New York. (*See* National Transportation Safety Board "NTSB" Report, attached to Brian J. Alexander Affidavit ("Alexander Aff." as Ex. A–2, A–10.))

The products liability claims against the BAE defendants, with their principal places of business in England, have little connection to Pennsylvania or New York, and therefore will have little effect on the court's determination. *See Dwyer*, 853 F.Supp. at 694 (in products liability cases, there is a likelihood that defendant's principal place of business is where majority of business decisions regarding design, manufacture, and distribution of product are made).

### C. *Convenience of the Parties*

Convenience of the parties is also not a determinative factor because either forum is equally convenient or inconvenient for different reasons. The plaintiffs reside in Pennsylvania, but have chosen New York

as the forum in which to pursue their claims. Thus, either forum is equally convenient to the plaintiffs. As for Executive Airlines, although it may be more convenient to litigate these cases in New York where the company is located, it already must defend itself in the MDPA with respect to the seven cases filed there. In addition, having to travel to Pennsylvania from New York is not such a tremendous burden, considering the relative closeness of the Pennsylvania and New York courthouses. *Cf. Houck,* 947 F.Supp. at 376 (finding that an extra two hour airplane flight for some parties or witnesses is not terribly burdensome). When comparing the EDNY cases in isolation, and not in relation to the MDPA cases, the BAE defendants will be equally burdened regardless of whether the actions are litigated in New York or Pennsylvania, because they undoubtedly will have to travel in either case. As will be discussed below, however, it seems terribly burdensome to require both defendants to litigate two separate actions arising out one airplane crash, and this factor strongly tips the scale in favor of transfer.

### D. *Convenience of Witnesses and Access to Sources of Proof*

■ Executive Airlines argues that transfer is warranted because a majority of the witnesses and evidence is located in Pennsylvania. The plaintiffs challenge this assertion, arguing that the majority of material witnesses and documentary proof are found outside of Pennsylvania. "The convenience of witnesses is considered a particularly compelling factor guiding the decision to transfer a case." *Kingsepp,* 1997 WL 269582, at *2; *Berman,* 30 F.Supp.2d at 657. A review of the potential witness list shows that, while more potential witnesses are located in Pennsylvania, not all of the witnesses are essential to the litigation. Of the twenty-one (21)

potential witnesses in Pennsylvania, several would likely provide cumulative and, at times, irrelevant testimony. For example, Executive Airlines lists eight "ear" and "eye" witnesses, four air traffic controller employees, and four FAA inspectors. (*See* Potential Witness List, attached to Hayes Aff. as Ex. E.) The plaintiffs note that the air traffic controllers' conduct is not at issue in the lawsuits and transcripts of communications between the flight crew and the controllers is readily available. (*See* Frantz Mem. at 18.)

Several key witnesses who possess information regarding the negligence and products liability claims are located in New York or England. The potential witnesses in New York include Executive Airlines' employees whose testimony is relevant to the negligence claims, including, for example, the principal operations inspector, the directors of maintenance and operations, the chief pilot, and the pilots and flight crew who flew the subject aircraft on the flight just prior to the crash. (*See* Potential Witness List, attached to Hayes Aff. at Ex. E.) Although these witnesses are located in New York, a factor against transfer, they already will have to go to Pennsylvania to testify in the actions pending there. This fact tips the balance in favor of transfer, because it is certainly more convenient for a witness to give testimony once, even if that witness must travel as a result.

■ In addition, Executive Airlines argues that liability and defenses will depend on a technical investigation of the causes of the crash, and the investigation will depend on expert evaluation of the subject aircraft, currently being stored in Pennsylvania. However, to the extent that an inspection of the wreckage by experts is an issue, "the convenience of expert witnesses is of little or no significance on a motion to

transfer." *Wibau Westdeutsche Industrie v. Am. Hoist & Derrick Co.*, 293 F.Supp. 273, 275 (S.D.N.Y.1968) (citation and internal quotation marks omitted).

### E. *Familiarity with Applicable Law*

The parties agree that Pennsylvania law will likely apply in these cases. Because the MDPA is more familiar with Pennsylvania law than a court sitting in New York, this factor weighs in favor of transfer. *See Howard*, 1997 WL 107633, at *3; *Kingsepp*, 1997 WL 269582, at *3; *but see O'Neill v. Stanwood Corp.*, 577 F.Supp. 1001, 1003 (S.D.N.Y.1984) (holding that choice of law is by no means dispositive of a motion to transfer, especially when there are no complex issues of foreign law).

### F. *Interests of Justice*

The most compelling reason to transfer the cases to the MDPA is because other actions arising out of the same events are currently proceeding in that forum. The interest of justice component of the Section 1404(a) analysis "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Kenwin*, 1999 WL 294800, at *4 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986)). In the present case, the balance of convenience based on the factors discussed above are in equipoise. Not any one factor is dispositive of the motion and, when considering the totality of the factors, it seems that all parties will experience some inconvenience regardless of where the suit is actually litigated. The fact that the plaintiffs do not reside in New York makes their desire to litigate in New York less persuasive. Several operative facts are located in the chosen forum, the proposed transferee forum and in neither forum. A weighing of conveniences to the parties renders that analysis unhelpful because at least one party will be inconvenienced in either forum. Access to sources of proof is also not determinative because several documents are located outside of Pennsylvania, while the aircraft with its engine and component parts, is currently being stored in Pennsylvania.

Generally, courts have given great weight to the need to avoid multiplicity of litigation from a single transaction. *See Lethbridge*, 1991 WL 233206, at *5 (citing 15 Wright, Miller & Cooper, Federal Practice & Procedure § 3854 at 441 (1986)); *Falconwood Fin. Corp. v. Griffin*, 838 F.Supp. 836, 842 (S.D.N.Y.1993) ("Interest of justice encompasses the private and public economy of avoiding multiple cases on the same issues.") (internal citation omitted). Moreover, "[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 425 F.Supp. 665, 667 (S.D.N.Y.1977). If the cases are adjudicated in different venues, undoubtedly witnesses will have to be deposed and will have to testify twice, two sets of documents will have to be produced, and judicial resources will have to be allocated to two actions when one court could more efficiently dispose of the litigation. *Lethbridge*, 1991 WL 233206, at *5 (interest of justice and fact that no plaintiff resided in the transferor district lead court to transfer case to district where similar case was pending). Therefore, the actions filed in the EDNY will be transferred to the judicial district where the first cases were filed because the interests of justice dictates that result.

## CONCLUSION

For the foregoing reasons, the motion to transfer venue is granted.

SO ORDERED.